UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

PHIL GARBER,

    Plaintiff,

v.                                             Case No. 1:06-CV-646

SHINER ENTERPRISES, INC.          HON. GORDON J. QUIST

    Defendant.
_____/

## OPINION

Plaintiff, Phil Garber ("Garber"), filed a complaint in the Ingham County Circuit Court against Defendant, Shiner Enterprises, Inc. ("Shiner"), on June 14, 2006, alleging claims for age discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.1101, *et seq.* (Count I); failure to provide a reasonable accommodation in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L.A. § 37.1101, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count II); disability discrimination in violation of the PWDCRA (Count III); wrongful termination (Count IV); and discharge in violation of public policy (Count V). Shiner removed the case to this Court on September 8, 2006, alleging federal question jurisdiction based upon Garber's claim under the ADA. Subsequent to the removal, the parties stipulated to dismiss the age discrimination claim in Count I. Presently before the Court are Shiner's motion for summary judgment on the remaining claims and Shiner's motion for Rule 11 sanctions. Garber has failed to respond to both motions. For the reasons set forth below, the Court will grant Shiner's motions.

**<u>Summary Judgment</u>**

As noted above, Garber has failed to respond to Shiner's motion for summary judgment within the time prescribed by W.D. Mich. LCivR 7.2(c). The Sixth Circuit has held that under these circumstances,

> a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.

*Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (noting that where the nonmoving party has not responded, a court's reliance on facts advanced by the movant is proper and sufficient). Having reviewed Shiner's motion, brief, and supporting materials, the Court concludes that Shiner has met its burden of demonstrating its entitlement to summary judgment.

Shiner owns and operates two quick-lube oil change facilities and a combined oil change/car wash facility. Shiner hired Garber as its General Manager in December 2000. Garber was responsible for the day-to-day operation. Many of Garber's duties as the General Manager required his presence on-site at the oil change and car wash facilities. During Garber's tenure, the quick-lube facilities lost money. By at least mid-2004, Garber's performance of his duties had become a major concern to Shiner. In various meetings, Mark Bailey, the owner of Shiner, conveyed his performance expectations to Garber. Among other things, those expectations were that Garber would spend more time on-site at the quick-lube facilities. Garber failed to meet these expectations and the business continued to lose money. On June 6, 2005, at a Shiner board of advisors meeting, a decision was reached to eliminate the General Manager position. Garber's poor performance was one of the key

considerations in that decision. The following day, Shiner terminated Garber's employment.

I.    **Failure To Accommodate Under the ADA and PWDCRA**

Garber first alleges that Shiner violated the ADA and the PWDCRA by refusing his request for a reasonable accommodation.[1] In his complaint, Garber alleges that he is disabled because he has multiple sclerosis (MS). (Compl. ¶ 22.) Garber further alleges that he worked for Shiner until July 7, 2005, that he "is cleared by his physician, indicating that he could return to work," that he "requested that [Shiner] allow him to work," and that Shiner refused his request for this accommodation. (*Id.* ¶¶ 31-33.)

In order to prevail on a failure to accommodate claim, a plaintiff must show that: (1) he is disabled; (2) he is qualified for the job with or without reasonable accommodation; and (3) that he was denied a reasonable accommodation. *Penny v. United Parcel Service*, 128 F.3d 408, 414 (6th Cir. 1997). Assuming, only for purposes of the instant motion, that Garber was disabled within the meaning of the ADA and the PWDCRA, his claim fails because he admits that Shiner gave him every accommodation that he requested. (Garber Dep. at 151 ("I did ask for accommodations and I got them.").) To the extent that Garber claims that Shiner should have volunteered to install remote video cameras at its facilities to allow Garber to work from home, his claim fails because he admits that he never asked for permission to work from home and never requested the installation of video cameras to allow him to do his job. (*Id.* at 150.) *See Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 518 (6th Cir. 2002) (stating that "the fact that Plaintiff failed to request these accommodations from Defendant is in itself fatal to Plaintiff's claim"). Moreover, to comply with such a request

---

[1] The Sixth Circuit has recognized that the PWDCRA substantially mirrors the ADA and that resolution of an ADA claim will generally resolve the plaintiff's PWDCRA claims. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 n.3 (6th Cir. 1998). Accordingly, the Court's analysis will apply to both claims.

Shiner would have had to create a new position for Garber that was not in existence at the time because, under his proposed after-the-fact accommodation, Garber would no longer be physically present at Shiner's three facilities – an important requirement of the General Manager position. The Sixth Circuit has held that such an accommodation is not reasonable. *See Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 730-31 (6th Cir. 2000). For at least these reasons, Shiner is entitled to summary judgment.

## II. Disability Discrimination

It is not clear whether Garber alleges discrimination on the basis of a disability under both the ADA and the PWDCRA or only the PWDCRA. In any event, the Court will treat his claim as based upon both laws.

In order to establish a prima facie case of disability discrimination, Garber must show that: (1) he was disabled; (2) he was otherwise qualified to perform the essential functions of the job; (3) he suffered an adverse employment action; and (4) a non-disabled person replaced him. *Martin v. Barnesville Exempted Village Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000). Again, assuming for purposes of this motion only that Garber was disabled, he cannot establish a prima facie case because he has not presented any evidence that he was replaced by a non-disabled person. In fact, Shiner presented evidence to show that it made a business decision to eliminate the General Manager position and spread its duties among other employees. Moreover, Garber has presented no evidence that his MS had anything to do with his termination. *See Martin v. Barnesville Exempted Vill. Sch.*, 209 F.3d 931, 934 (6th Cir. 2000). Finally, even if Garber could present a prima facie case, it is undisputed that Shiner had a legitimate non-discriminatory reason for terminating Garber, namely, his poor performance. Accordingly, this claim also fails.

4

**III.     Wrongful Termination**

Garber alleges in Count IV a claim for wrongful termination, based upon his assertion that while he "was employed by [Shiner], he was led to believe that he would not be terminated except for good cause." (Compl. ¶ 64.) Under Michigan law, "[e]mployment relationships are presumed to be at will in the absence 'of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause.'" *Steiger v. Montmorency Area Rural Cmty. Hous.*, No. 264836, 2006 WL 335837, at *1 (Mich. Ct. App. Feb. 14, 2006) (per curiam) (quoting *Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 163-64, 579 N.W.2d 906, 910-11 (1998)). A just-cause employment relationship can also be found "as a result of an employee's legitimate expectations grounded in an employer's policy statements." *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 598, 292 N.W.2d 880, 885 (1980).

The evidence before the Court shows that during Garber's employment, Shiner had a policy of at-will employment that applied to all employees, including Garber. Moreover, Garber's deposition testimony shows that, at most, any expectation of just cause employment that he had was based upon his own subjective interpretation of vague statements or references that could not support a claim of just cause employment or a legitimate expectations claim under *Toussaint*. Summary judgment is thus proper on this claim as well.

**IV.     Discharge Against Public Policy**

Garber's final claim is for discharge against public policy. Under Michigan law, an at-will employee's discharge will be deemed to violate public policy if any of the following occurs: (1) the discharge is in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for failing or refusing

to violate a law within the course of his employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment. *See Suchodolski v. Mich. Consolidated Gas Co.*, 412 Mich. 692, 694-96, 316 N.W.2d 710, 711-12 (1982). There is no evidence that Garber's termination involved any of these situations. Moreover, to the extent that Garber intended to allege a *Toussaint* claim under the rubric of public policy, the Court has already concluded that there is no basis for such a claim.

### Motion for Rule 11 Sanctions

Shiner has also moved for sanctions pursuant to Fed. R. Civ. P. 11 (c), alleging that Garber's claims and allegations are frivolous within the meaning of Rule 11. The Court previously dismissed the motion without prejudice based upon Shiner's apparent failure to comply with the safe harbor provision of Rule 11. Shiner has since re-filed its motion in which it presented proof that it provided Garber's counsel with a copy of the motion on March 23, 2007, more than 21 days before filing, in accordance with the safe harbor provision. Accordingly, the Court finds that Shiner has complied with all procedural requirements in filing its motion.

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, an individual who files a pleading or other paper with a court certifies that:

> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> **(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b)(1) - (4). Upon finding that Rule 11 has been violated, "the court may . . .

impose an appropriate sanction upon the attorneys, law firms, or parties that have violated" the rule. Fed. R. Civ. P. 11(c). What constitutes an appropriate sanction is a matter committed to the discretion of the district court. *See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996). The range of sanctions includes

> directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Civ. P. 11(c)(2). However, the sanction may not exceed "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Id.*

In the Sixth Circuit, the test for determining whether a party has violated Rule 11 is whether the individual's conduct was reasonable under the circumstances. *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). The standard is an objective one. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989). "Thus, an attorney's good faith is not a defense." *Id.* The attorney's conduct is to be judged at the time the pleading or paper was signed rather than on the basis of hindsight. *See INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987).

Having reviewed Shiner's supporting documents for its summary judgment and Rule 11 motions, the Court agrees with Shiner that Garber's claims are frivolous and unreasonable. This is well demonstrated by Garber's admissions during his deposition regarding his failure to accommodate claim that: (1) Shiner granted all of his requests for an accommodation; (2) he did not need an accommodation to perform his duties; and (3) he never requested to be permitted to work from home. These admissions readily show that there was no basis for such a claim. Likewise, Garber's testimony regarding the basis for his wrongful discharge and discharge in violation of

public policy claims shows that his assertion of such claims was objectively unreasonable. Frankly, in this Court's judgment, Garber's and his counsel's failure to respond to the instant motions for summary judgment and for Rule 11 sanctions is tantamount to an admission that there was never any legal or factual basis to support the asserted claims. Accordingly, the Court concludes that Garber violated Rule 11 and that an award of attorney fees against Garber and his counsel, jointly and severally, is an appropriate sanction. Because counsel for Shiner has not submitted an affidavit or a statement of fees setting forth the hourly rate or a description of the work and time spent in this matter, the Court has no basis at this point for determining an appropriate amount of fees. Therefore, the Court will direct Shiner's counsel to submit and serve an affidavit or verified statement of fees and services.

## **Conclusion**

For the reasons set forth above, the Court will grant Shiner's motion for summary judgment and motion for Rule 11 sanctions.

An Order consistent with this Opinion will be entered.


Dated:  August 10, 2007                                      /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE